EDWARD WHITEHOUSE V. THE AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

Surety on Contractors Bond:    FAILURE OF EMPLOYE TO OBTAIN LIEN ON PUBLIC IMPROVEMENT:    *Release of surety.*    Code, section 3102, provides that every laborer who, as subcontractor, shall perform labor on any public building not belonging to the state, shall have a claim against the public corporation constructing such building for the value of his services not in excess of the contract, but the corporation shall not be required to pay any such claim before or in any different manner from that provided in the principal contract; that the claim shall be made by filing with the public officer through whom the payment is to be made a statement of demand; and that such claims shall have priority in the order in which they are filed. A contractor with a city gave a bond, with surety, for payment of labor claims; and the labor claimants filed with the city auditor their claims for a preference out of the funds due the contractor, but they were denied because of the defective procedure. No appeal was taken, and the funds were exhausted in the payment of other claims. The surety on the bond, when sued on the other claims, contended that he was not liable because claimants had not preserved their claims against a fund out of which he might have been preserved from loss. *Held,* that the surety was not released, as, under the statute, the claimants had no lien, but merely a preference, and they were not bound to prosecute an action to obtain a lien.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, MAY 27, 1902.

ACTION at law on a bond on which defendant was surety. Defendant, in answer, pleaded that it was released because plaintiff failed to preserve a lien or claim held by him against a certain fund due from the city of Des Moines to the principal on the bond. Judgment was rendered for plaintiff, and defendant appeals.—*Affirmed.*

*E. D. Samson* for appellant.

*A. M. Miller* and *C. C. Carter* for appellee.

Deemer, J.—One King entered into contracts with the city of Des Moines for the grading of certain streets and alleys therein, and gave a bond, with the defendant as surety, whereby he undertook to pay all just claims for labor performed in complying with his contracts. Plaintiff is the assignee of the claims for labor, and as such brought action on the aforesaid bond. King brought suit on his contracts against the city, and in his action recovered judgment for $2,187. His attorneys were allowed $552 of this fund as a paramount lien; and something like $225 in labor claims, which defendant admits were prior to the claims of plaintiff's assignors, were also allowed against it. The remainder of the fund was used in paying other claims which defendant contends were inferior to the claims of plaintiff's assignors, had they pursued the statute with reference to labor claims, to which statute we shall presently refer. These assignors prepared sworn demands, and filed them with the city auditor; but their claims to a preference out of the funds due from the city were denied by the district court for the reason that the statements were insufficient in form, and the procedure so defective that their claims to priority could not be sustained. No appeal was taken from this ruling. This action was then brought on the bond, on which defendant was surety, which provided that King would pay all claims for labor and material, and preserve the city of Des Moines harmless from any liens or claims for labor or material furnished. Defendant contends that it is released, because neither plaintiff nor his assignors preserved their liens or claims upon the fund due King for work performed by him for the city.

Section 3102 of the Code reads as follows: "Every mechanic, laborer or other person who, as sub-contractor,

shall perform labor upon or furnish materials for the construction of any public building, bridge or other improvement not belonging to the state, shall have a claim against such public corporation constructing such building, bridge or improvement for the value of such services and material, not in excess of the contract price, to be paid for such building, bridge or improvement, nor shall such corporation be required to pay any such claim before or in any different manner from that provided in the principal contract. Such claims shall be made by filing with the public officer through whom the payment is to be made, an itemized sworn statement of the demand, within thirty days after the performance of the last labor or the furnishing of the last material, and such claims shall have priority in the order in which they are filed."

Defendant relies on the following propositions in support of its defense, and for a reversal of the judgment of the trial court. "First. That plaintiff's assignors held a lien on the fund due from the city to King, which they negligently failed and neglected to enforce. Second. The rule is that, on payment of a debt by a surety, he is subrogated to all securities and rights, not only against the principal debtor, but against third parties, which were held by the creditor to secure the payment of the debt, and that, therefore, if the creditors release property or securities out of which the surety might have been preserved from loss, he thereby releases the surety from liability on the contract of suretyship." Considered abstractly, these propositions of law are correct, and, as usual, the difficulty lies in the application of principles, rather than with the law itself. Thus, in *Mingus v. Daugherty*, 87 Iowa, 59, we said: "Our conclusion is that, when a creditor holds a landlord's lien for the debt due him, it is a security; and if, through his act or neglect, that security is lost, in whole or in part, without the consent of the surety, it works a discharge of the personal surety to the extent of the security

lost." See, also, *Auchampaugh v. Shmidt,* 70 Iowa, 642; *First Nat. Bank v. O' Connell,* 84 Iowa, 378; *Gilbert v. Adams,* 99 Iowa, 530; *Manning v. Furguson,* 103 Iowa, 567; *Port v. Robbins,* 35 Iowa, 212; *City of Keokuk, v. Love,* 31 Iowa, 122; *Schroeppell v. Shaw,* 3 N. Y. 459. But it is nevertheless true that a creditor is not bound to sue out an execution, to preserve his rights against the surety, although his omission to do so results in the loss of a lien on the property of the principal debtor. *Chambers v. Cochran,* 18 Iowa, 165. In *City of Maquoketa v. Willey,* 35 Iowa, 327 it is said: "The law does not require the principal to institute a suit against the debtor, or to pursue an action of indebtedness with diligence, and to call to his aid all the remedies provided by the law. If he has brought suit, he may stop short in its prosecution before judgment, or, if he has recovered judgment, he may fail or refuse to sue out execution; and, indeed, if execution has been issued, he may cause its return without the levy. All this may be done, even though judgment, execution, and levy would have resulted in the collection of the debt against the principal debtor, and the surety is not thereby discharged." The rule seems to be well settled that mere passive delay on the part of the creditor in bringing action against the principal debtor will not, in the absence of a request from the surety to sue, as provided in sections 3064, 3065, Code, release the surety. *Vredenburgh v. Snyder,* 6 Iowa, 39. With these two rules in mind, we are able to formulate the principle which should govern this case; A creditor should apply in payment of his debt, or hold in trust for the benefit of the surety, all securities which he may receive or procure for that purpose by contract or by operation of law, so that, if compelled to discharge the debt, the surety may be subrogated to them. But the law, in the absence of special statute, annexes no condition requiring the creditor to proceed against the principal debtor, or to do any act, no matter what his opportunity to procure security

or enforce payment from that principal. He may remain entirely passive, and rely on the undertaking of the surety. So if he commences a suit he is under no obligation to pursue it, unless he has made an actual levy on the goods of the principal or others, and thus obtained a lien. *Hurd v. Little,* 12 Mass. 502; *Bank v. Dixon,* 4 Vt. 587 (24 Am. Dec. 640); *Crane v. Stickles,* 15 Vt. 252. Defendant cites some dicta to the effect that "if the creditor have the means of satisfaction actually or potentially in his hands, and releases them, the surety is discharged." *Baker v. Briggs,* 8 Pick. 130 (19 Am. Dec. 311); *Com. v. Vanderslice,* 8 Serg. & R. 457; *Law v. East India Co.,* 4 Ves. 829; *Lichtenthaler v. Thompson,* 13 Serg. & R. 157, (15 Am. Dec. 581). In each and all of these cases, however, there was a lien, and the money was held under a right of application. In the *Baker Case,* Judge Parker said the money in the hands of the assignor was the same as if in the hands of the creditor; that there was a right to apply, created by the assignment of the debtor; and that the money was strictly a security. In *Com. v. Vanderslice,* a lien had been acquired by an actual levy on the goods of the principal debtor. In the case from 4 Ves., funds had been left in the hands of the creditor to pay the debt, and there was a right of application. In *Lichtenthaler's Case,* the plaintiff, a lessor, held a landlord's lien, by statute, on the goods of the principal debtor, and the proceeds thereof, which he fraudulently permitted a prior lessor to claim. *Mingus v. Daugherty, supra,* is also a case where the creditor held a landlord's lien; and it was there said that a landlord's lien is clearly a security given to and held by him for the payment of rent. It is as much a security held by him as would be a mortgage taken to secure the same payment. What shall be deemed a security, within the meaning of these rules, is a matter upon which there has been some contrariety of decision. But we are inclined to the view that it must be a mortgage, pledge, or lien,—some right to

or interest in the property which the creditor can hold in trust for the surety, and to which the surety may be subrogated.  *Read v. Surety Co.*, 116 Iowa,  —;  *Glazier v. Douglass*, 32 Conn. 393; *Blanding v. Wilsey*, 107 Iowa, 46; *Hetherington v. Bank*, 14 Ala. 68; *Howe Machine Co. v. Farrington*, 82 N. Y. 121; *Grisard v. Hinson*, 50 Ark. 229 (6 S. W. Rep. 906); *Fuller v. Tomlinson*, 58 Iowa, 111; *Dye v. Dye*, 21 Ohio St. 86 (8 Am. Rep. 40).  A creditor, not being bound to active diligence to obtain a lien, is no more bound to levy an execution which is not otherwise a lien than he would be to commence suit or take any other steps to obtain a lien.  *Fuller v. Tomlinson, supra*; Brandt, Suretyship (2d Ed.) section 438.

With these rules settled, we now turn to the pivotal point in the case: Does the statute we have quoted create a lien upon the funds due the principal contractor? No lien is created on the building or improvement. Indeed, it is doubtful if one could be created thereon.  *Mosher v. School Dist.*, 44 Iowa, 122; *Breneman v. Harvey*, 70 Iowa, 479; *Loring v. Small*, 50 Iowa, 271; *Baker v. Bryan*, 64 Iowa, 561; *Whiting v. Story County*, 54 Iowa, 81.  The lien, if any, must be upon the fund in the hands of the corporation.  But the statute does not say that it is a lien. It says that a laborer shall have a claim against the corporation for the value of his services, and that such claims shall have priority in the order in which they are filed. This, to our minds, simply gives labor claimants a preference, and does not in any sense create a lien.  Affirmative action on the part of the claimant is needed to secure this preference, and payments to the principal contractor in accord with the terms of the contract defeats the claim. Statutes providing merely for preferences do not create liens.  *Brent v. Bank*, 10 Pet. 596 (9L. Ed. 547).  While the section we have quoted is found in the chapter of the Code relating to mechanic's liens, it is manifest that no lien is created, and that, at most, the laborer has an

equitable right or remedy, as distinguished from a lien, and that without some action on his part no lien is created. This action, as we have seen, he was not compelled to take, and until taken, and an order secured, he had no lien upon, or right to, the funds in the hands of the city.    If plaintiff's assignors had surrendered, without the consent of the defendant, an actual lien held by them, a different rule would obtain.    But as they had no lien, and were not bound to prosecute an action to obtain one, the defendant was not released.

As sustaining our conclusions, see *Vance v. English,* 78 Ind. 80; *Sheldon v. Williams,* 11 Neb. 272 (9 N. W. Rep. 86); *Mundorff v. Singer,* 5 Watts, 172; *Richards v. Com.,* 40 Pa. 146.

The judgment of the district court is correct, and it is AFFIRMED.