**LUMBERMAN'S WHOLESALE CO., Appellant,**

v.

**OHIO FARMERS INSURANCE COMPANY, Miami Constructors, Inc., Appellees.**

No. 86–189.

Supreme Court of Iowa.

March 18, 1987.

James L. Spellman of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellant.

Allan J. Carew, Douglas M. Henry of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellees.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

Plaintiff, Lumberman's Wholesale Co. (Lumberman's), an unpaid supplier of building materials to a subcontractor on a public improvement project, appeals from the denial of its claim against the retained percentage and the general contractor's bond pursuant to Iowa Code chapter 573 (1983). The court of appeals affirmed the disposition by the district court. After consideration of the issues presented, we affirm the decision of the court of appeals.

In October 1983, Lumberman's supplied roofing materials to Townsend Roofing and Sheet Metal, Inc. (Townsend), a subcontractor on a public improvement contract with the city of Iowa City. Miami Constructors, Inc. (Miami) was the general contractor on that project. Ohio Farmers Insurance Company was the surety on the labor and material payment bond required of Miami under Iowa Code section 573.6 (1983). On February 22, 1984, Lumberman's filed a sworn itemized claim with the city clerk pursuant to Iowa Code section 573.7 (1983). The claim recited that Lumberman's had not been paid for material furnished on the project having a value of $39,765.

Lumberman's later brought this action to recover on the claim. Miami and its surety resisted payment, alleging that, although the claim was timely filed, Lumberman's had failed to comply with the notice requirement imposed on a material supplier by Iowa Code section 573.15 (1983). The district court found that the required notice had not been given and denied the claim.

Iowa Code section 573.15 provides:

No part of the unpaid fund due the contractor shall be retained as provided in this chapter on claims for material furnished, other than materials ordered by the general contractor or his authorized agent, *unless such claims are supported by a certified statement that the general contractor had been notified within thirty days after the materials*

*are furnished or by itemized invoices rendered to contractor during the progress of the work, of the amount, kind, and value of the material furnished for use upon the said public improvement....*

(Emphasis added.) Section 573.6 provides that the principal and surety on the bond shall not be liable on a claim under chapter 573 unless the claim has first been established against the percentage of the contract price required to be retained until the project is completed. All of the undistributed contract balance is not subject to such claims; only the portion which the statute requires to be retained. *See Hercules Manufacturing Co. v. Burch*, 235 Iowa 568, 573–74, 16 N.W.2d 350, 353–54 (1944); *Southern Surety Co. v. Jenner Bros.*, 212 Iowa 1027, 1035–36, 237 N.W. 500, 504–05 (1931). Consequently, if the provision in section 573.15 that "[n]o part of the unpaid fund ... shall be retained" is determined to be applicable to Lumberman's claim, the result will be that the claim cannot be allowed under chapter 573. *Id.* at 1035–36, 237 N.W. at 504–05.

Lumberman's urges that section 573.15 is inapplicable in the present case for two reasons. These are: (1) that Lumberman's gave timely notice of its claim to the general contractor by furnishing invoices to Miami on February 20, 1984; and (2) that, because two other claimants on the project, Riverview Products, Inc. and Parkview Company, filed claims requiring a retainage of the unpaid contract balance, Lumberman's should be permitted to claim against that retainage with any deficiency being satisfied by Miami's surety. We consider these claims in inverse order.

### I. *Claiming Against Retainage Triggered by the Claims of Other Contractors.*

Lumberman's urges that we recognized in *Cities Service Oil Co. v. Longerbone*, 232 Iowa 850, 6 N.W.2d 325 (1942), that, if at least one claim triggers a retainage of funds under chapter 573, other claimants can thereafter participate in a suit to recover against that retainage or the general contractor's surety, even though the other claimants did not file their claims within the statutory period or commence an action within the time provided by Iowa Code section 573.16 (1983). Lumberman's refers to this principle as "piggybacking."

Our review of the *Longerbone* decision suggests that the type of "piggybacking" which was permitted should be limited to claims of persons or entities who have contracted directly with the general contractor. As to such claims, it does not extend the general contractor's liability to permit claims against funds owed the general contractor which have been retained by the public corporation as a result of claims filed by other parties. The general contractor is liable for such claims in any event under general principles of contract law. The timely filing claimants are not prejudiced because they will receive any deficiency from the general contractor's surety.

A different situation prevails, however, with respect to claims on behalf of subcontractors or material suppliers who do not have contracts with the general contractor. Failure to require the latter type of claimant to file timely claims or to comply with the notice requirement of section 573.15 would serve to extend the liability of the general contractor beyond that established by either the statutory scheme or the contractor's contractual liability. We conclude the court of appeals was correct in holding that Lumberman's should not be permitted to join in a claim against the retainage generated by claims filed by Riverview Products, Inc. or Parkview Company.

### II. *Timeliness of Notice Under Section 573.15.*

It appears without dispute that, on February 20, 1984, Lumberman's furnished Miami with detailed invoices showing the kind, amount, and value of material furnished to Townsend. This was prior to completion of the project by Miami. Lumberman's urges that the statutory language requiring "itemized invoices rendered to a contractor during the progress

of the work" should be interpreted as permitting the giving of notice via invoices at any time prior to final completion of the project by the general contractor. The district court and the court of appeals rejected that contention and concluded that the words "during the progress of the work" refer to progress of that portion of the work in which the materials for which claim is made are utilized. Under that interpretation, the notice given Miami in February 1984 was untimely because the portion of the project involving Lumberman's materials was completed in December 1983.

■ Although the statutory language is not a model of clarity, we believe that the court of appeals interpretation more nearly accords with the apparent purpose of the statute than the interpretation proposed by Lumberman's. If a claimant who furnishes materials during a project's early stages is permitted to await the completion of the entire project before giving notice under section 573.15, this would add little to the protection already afforded the general contractor by the statutory period for filing claims.

Lumberman's suggests that its proposed interpretation of section 573.15 finds support in *Economy Forms Corp. v. City of Cedar Rapids*, 340 N.W.2d 259, 264 (Iowa 1983). We disagree. The issue of interpretation of section 573.15 presented in the present case was not before the court in *Economy Forms*. As a result, the language utilized in referring to the statute in that case does not aid in the determination of its meaning in the present case. We conclude that the court of appeals and district court applied the correct meaning of the statute. We have considered all issues presented and find no basis for reversing the decision of the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.